Maureen HAY, a Washington resident, Igor Smal, a Washington resident, Hanna Smal, a Washington resident, Jordan Smith, a Washington resident, Cameron Smith, a Washington resident, Alex Kulibaba, a Washington resident, Natalya Manchik, a Washington resident, Dan Hart, a Washington resident, Shawna Hart, a Washington resident, Peter Manning, a Washington resident, Adrienne Manning, a Washington resident, Tawny Cabral, a Washington resident, Whitney Decoria, a Washington resident, Ryan Decoria, a Washington resident, Josephine Pangan, a Washington resident, Aubrey Bradley, a Washington resident, Oznur Bradley, a Washington resident, Cody Whitney, a Washington resident, Yvonne Whitney, a Washington resident, Haroon Sakhi, a Washington resident, Adela Sakhi, a Washington resident, Christine Johnson, a Washington resident, Ken Edwards, a Washington resident, Sherri Pena, a Washington resident, Yong Lim, a Washington resident, Amber Lee, a Washington resident, Whitney Sargent, a Washington resident, Yevgeniy "John" Zadneprovskiy, a Washington resident, Maria Zadneprovskiy, a Washington resident, Eun Young Lee, a Washington resident, Kury Berg, a Washington resident, Tracey Berg, a Washington resident, Pete Nito, a Washington resident, Jenelyn Nito, a Washington resident, William Dunger, a Washington resident, Banny Chhoeun, a Washington resident, Sareth Chhoeun, a Washington resident, Adam Jackson, a Washington resident, Sara Jackson, a Washington resident, Layla Bugado, a Washington resident, Brad Bugado, a Washington resident, Phu Do, a Washington resident, Hien Tran, a Washington resident, Plaintiffs,

v.

AMERICAN SAFETY INDEMNITY COMPANY, Defendant.

CASE NO. C17–5077 RJB

United States District Court,
W.D. Washington,
at Tacoma.

Signed 09/19/2017

Christopher Casey, Todd K. Skoglund, Casey & Skoglund PLLC, Seattle, WA, for Plaintiffs.

Stephania Camp Denton, Carson R. Cooper, Lane Powell PC, Seattle, WA, for Defendant.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ROBERT J. BRYAN, United States District Judge

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. 14) and the Plaintiffs' Motion for Summary Judgment (Dkt. 16, refiled as 20–1). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

In this insurance coverage dispute, Plaintiffs assert that Defendant American Safety Indemnity Company ("ASIC") is liable for breach of contract, bad faith, violations of Washington's Insurance Fair Conduct Act ("IFCA") and Washington's Consumer Protection Act ("CPA") in connection with property damage to Plaintiffs' homes in the Valley Haven housing community. Dkt. 1. Both parties now move for summary judgment. For the reasons provided, the Defendant's Motion for Summary Judgment (Dkt. 14) should be granted and the Plaintiffs' Motion for Summary Judgment (Dkt. 16, refiled as 20–1) should be denied.

## I. RELEVANT FACTS AND PENDING MOTIONS

Plaintiffs are purchasers of homes in the Fife, Washington Valley Haven housing development. Dkt. 1. The houses were built and sold by Highmark Homes, LLC and its principal owner and agent Tom Tollen (collectively "Highmark"). Dkt. 17–14. Highmark purchased the lots for the houses from First Savings Bank in phases pursuant to a purchase and sales agreement in which Highmark agreed to purchase a group of lots, and then had the right of first refusal on the other lots with preset deadlines. Dkt. 17–14, at 7–8. Highmark purchased the lots on which the homes were built in the following phases: around eight lots on March 30, 2012, another group on September 13, 2012, one lot on November 27, 2012, and the last group of lots on December 27, 2012. Dkts. 17–1, 17–2, 17–4, and 17–5. The first house was complete in July of 2012; the last in July 2013. Dkt. 17–9, at 4–5. Highmark had insurance policies with other carriers and Defendant ASIC. Dkt. 17–9.

After the Plaintiffs moved into the homes, they noticed various issues with the construction, including problems with the siding and windows, and water intrusion. Dkt. 17–6. On May 15, 2014, Plaintiffs filed suit in Pierce County, Washington Superior Court against Highmark and Mr. Tollen, asserting construction defect claims ("underlying case"). Dkt. 17–7; *Hay v. Highmark, et al.*; Pierce County, Washington Superior Court case number 14-2-08793-0. The Plaintiffs asserted that Highmark "constructed 29 homes located within Valley Haven project development, in Fife, Washington" and "sold 29 homes located within Valley Haven project development, in Fife, Washington." *Id.* Plaintiffs made claims against Highmark for negligence, breach of contract, breach of express and implied warranties, and violations of the Washington Condominium Act. *Id.* Highmark, in turn, asserted crossclaims against some of its subcontractors, AAA Framing Corporation, Absi Builders, Inc., and Afdem & Son's Dozing, Inc. *See* Dkt. 17–13.

On May 22, 2014, Highmark tendered a claim, by letter, to Defendant ASIC (and the other insurance companies), and included a copy of the Plaintiffs' complaint and other pleadings filed in the underlying case. Dkt. 15–4, at 2–47. In the tender letter, Highmark indicated that 29 homeowners had filed suit against it. Dkt. 15–4, at 3. One of the other insurance carriers, International Insurance Company of Hannover ("Hannover"), agreed to defend Highmark. Dkt. 17–15.

On May 29, 2014, a representative of ASIC contacted Highmark's attorney, and

asked for information including: dates of completion and sale, when work was completed, other insurance, job files, and subcontractor information. Dkt. 17–8. Highmark's attorney sent a response on June 13, 2014. Dkt. 17–9. On June 23, 2014, ASIC sent an email and asked Highmark's lawyer to "please confirm whether Highmark worked on all 29 homes." Dkt. 15–5, at 2. On July 15, 2014, Highmark's lawyer responded and stated that Highmark and its subcontractors constructed all 29 homes at issue in the underlying case. *Id.*

ASIC sent Highmark a letter, dated August 7, 2014, and advised that there was no coverage under the policies for its claim, citing, in part an exclusion for "tract housing." Dkt. 15–5, at 5–10. On October 21, 2014, Highmark re-tendered the claim, explaining that the tract housing exclusion did not apply because "the houses weren't built and arranged according to a single plan," Highmark wasn't the original developer, the original developer lost the lots in foreclosure, Highmark initially bought a few lots, built homes on those lots, and then evaluated whether to purchase more lots. Dkt. 15–5, at 13. The letter asserted that "Highmark did not by a tract or any portion thereof, and never contemplated developing a unified community," so the exclusion did not apply. *Id.*

On March 9, 2015, ASIC again denied Highmark's claim, citing the "tract housing" exclusion. Dkt. 15–5, at 25–27.

In September of 2016, Plaintiffs settled the claims asserted in the underlying case against Highmark for $4,250,000 and for an assignment of Highmark's potential claims against the subcontractors and Highmark's insurance companies (except Hannover). Dkt. 17–15.

On November 21, 2016, Plaintiffs' attorney, in accord with assigned claims from Highmark, mailed ASIC a Washington Office of the Insurance Commissioner's "Insurance Fair Conduct Act 20 Day No-

tification Sheet," which was stamped as received by ASIC on November 28, 2016. Dkts. 15–5, at 29–30. This form identified "Highmark Homes LLC" as the first party claimant and "Commercial General Liability Policy" as the line of insurance. *Id.*, at 29. It did not identify a policy number. *Id.*

In response, ASIC's counsel contacted Plaintiffs' counsel and indicated that it did not know to which case the notification applied or the basis for any complaints. Dkt. 15–5, at 32. Plaintiffs' counsel responded by email on December 13, 2016, stating that: ASIC "insured Best Quality Framing ("BQF") which contracted to [sic] with Highmark Homes to build homes in the Valley Haven project. The contract required BQF to name Highmark Homes as an addition insured… Highmark tendered the claims on February 19, 2015." Dkt. 15–5, at 32. The email then lists policy numbers; none of the policy numbers listed in the email match the policy numbers at issue here. *Id.*

This case was filed on January 31, 2017. Dkt. 1. On February 16, 2017, the Pierce County, Washington Superior Court entered judgment in the underlying case against Highmark in favor of the Plaintiffs for $4,462,344.00. Dkt. 19–1, at 2; *Hay v. Highmark, et al.*, Pierce County, Washington Superior Court case number 14–2–08793–0.

Parties now file cross motions for summary judgment, and have both filed cross responses and replies. Dkts. 14, 16, 18, 22, 24 and 25. Their arguments will be considered by claim.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *T.W. Elec. Service, Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630 (9th Cir. 1987).

■ The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505, *T.W. Elect. Service, Inc.,* 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service, Inc.,* 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

**B. WASHINGTON STATE SUBSTANTIVE LAW APPLIES**

■ Under the rule of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts sitting in diversity jurisdiction, as is the case here, apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.,* 323 F.3d 1219, 1222 (9th Cir. 2003). " '[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.' " *Vestar Dev. II, LLC v. Gen. Dynamics Corp.,* 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996)).

**C. CONTRACT CONSTRUCTION GENERALLY, CLAIMS FOR BREACH OF CONTRACT FOR INDEMNITY AND CLAIMS FOR BREACH OF DUTY TO DEFEND HIGHMARK**

■ In Washington, an insurance policy is construed as a contract and given " 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insur-

ance.'" *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wash.2d 171, 400 P.3d 1234 (2017), *as modified* (Aug. 16, 2017)(*quoting Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wash.2d 618, 627, 881 P.2d 201 (1994)). "If terms are defined in a policy, then the terms should be interpreted in accordance with that policy definition." *Kitsap Cty. v. Allstate Ins. Co.*, 136 Wash.2d 567, 576, 964 P.2d 1173 (1998). "Undefined terms are to be given their plain, ordinary, and popular meaning." *Xia*, at 6, 400 P.3d 1234. If language in an insurance contract is susceptible to two different but reasonable interpretations, it is considered "ambiguous." *Kut Suen Lui v. Essex Ins. Co.*, 185 Wash.2d 703, 712, 375 P.3d 596 (2016). However, where the policy language is clear and unambiguous, [a Washington] court will not modify the contract or create ambiguity where none exists." *Xia*, at 6, 400 P.3d 1234.

Plaintiffs assert that ASIC breached both its contractual agreement to indemnify Highmark for Plaintiffs' claims in the underlying case and breached its duty to defend Highmark in that case. Dkt. 1.

1. Agreement to Indemnify under the Policies and the "Tract Housing" Exclusion

The provision in each of the applicable policies at issue here, the "Condominium, Apartment, Townhouse, or Tract Housing Coverage Limitation Endorsement," excludes coverage for property damage "however caused, arising directly or indirectly, out of, or related to" an insured or insured subcontractor's operations or work that is "incorporated into a tract housing project or development." Dkts. 15–1, at 66; 15–2, at 69; and 15–3 at 69. The exclusion defines "tract housing" or "tract housing project or development" as: "any housing project or development that includes the construction, repair or remodel of twenty-five (25) or more residential buildings by our insured in any or all phases of the project or development." *Id.*

Exclusionary clauses, like the one at issue here, "are to be most strictly construed against the insurer." *Am. Best Food*, at 406, 229 P.3d 693. Based on the plain language of the policy, it is clear that the exclusion applies. Highmark constructed 29 homes in the Valley Haven development—over the 25 house limit. "[W]hile exclusions should be strictly construed against the drafter, a strict application should not trump the plain, clear language of an exclusion such that a strained or forced construction results." *Lui*, at 712, 375 P.3d 596.

In both their Response to ASIC's motion for summary judgment and in their own cross motion for summary judgment, Plaintiffs assert that the word "phases" in the exclusion is an ambiguous term, and should be construed to mean "a distinct stage of development." Dkts. 18, at 10; and 20–1, at 17 (*citing* Webster's II New Riverside University Dictionary). Plaintiffs argue that although the construction of the houses within each group of lots was "phased," "the actual purchase ... of lots was not" and were "completely separate and distinct transactions." *Id.* So, they maintain, the exclusion does not apply. *Id.* Plaintiffs' forced construction of the exclusion's language is not persuasive and does not comport Highmark's agent, Mr. Tollen's, testimony. He testified that Highmark purchased the lots for the houses from First Savings Bank pursuant to a single purchase and sale agreement in which Highmark agreed to purchase a group of lots, and then had the right of first refusal on the other lots, with preset deadlines for the purchase of all 29 lots. Dkt. 17–14, at 7–8. He testified further, that they "would try to start at least three homes a month, or possibly had five, six, or

seven homes going at a time," and that Haven Valley became the biggest project Highmark had "because [they] continually had construction" going. Dkt. 17–14, at 30–31.

Plaintiffs' contend that the exclusion only applies if all 25 or more homes were completed within a single policy year. Dkts. 20–1, and 18. They assert that the construction of the homes at issue took place over more than a single policy year, so the exclusion doesn't apply. *Id.* The plain language of the policy doesn't support this interpretation. The exclusion doesn't contain any time limits, and instead specifically provides that coverage is excluded at "in any or all phases of the project or development."

Plaintiffs argue that if the exclusion applied, it would make the insurance policy illusory as a whole. Dkts. 18, at 11; and 20–1, at 18. They point to Highmark's application for the policies, which states that its business purpose was to do small groups of homes. *Id.* (*citing* Dkt. 17–16). Plaintiffs maintain that Highmark followed its stated business purpose here. *Id.* They assert that to find that the exclusion applies would mean that ASIC issued a policy that "specifically excludes the work described in its policy application" and that would be "unfair, unjust an unconscionable." *Id.*

Plaintiffs' assertion that Highmark only did "small groups of homes" is not an accurate reflection of Mr. Tollen's testimony about Highmark's practices at Valley Haven. Further, construing the exclusion as excluding projects or developments of 25 houses or more is consistent with Highmark's application for insurance—they applied for insurance to build projects of a small number of homes, and the policies excluded projects that built 25 or more homes. Although Highmark estimated starting "100+" homes over "the next 12 months" in its application, High-

mark also stated that the nature of the business was building "single family homes (small tracts) and townhomes" (Dkt. 17–16, at 2 and 12), and so, reconciling the two portions of the application, it appears Highmark told ASIC that it did not intend to have a project or development that included 25 or more homes. Highmark also stated in the application that it did **not** "work on condominiums, townhouses, apartments or tracts over 5 units at any one time; except for repair or remodeling of not more than 5 units within a development at any given time." Dkt. 17–16, at 13. This answer also supports the idea that Highmark applied for insurance to work on small developments and projects. Moreover, even if Highmark thought it was insured for the Valley Haven project, "in Washington the expectations of the insured cannot override the plain language of the contract." *Lui*, at 712, 375 P.3d 596. The tract housing exclusion applies; ASIC did not breach its duty to indemnify Highmark under the insurance policies.

### 2. Duty to Defend

In Washington, "the duty to defend is different from and broader than the duty to indemnify." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d 398, 404, 229 P.3d 693 (2010)(*internal citation omitted*). The duty to indemnify exists only if the insurance policy actually covers the insured's liability, whereas the duty to defend arises when the policy could conceivably cover allegations in a complaint. *Xia*, at 6, 400 P.3d 1234 (*internal citations omitted*). "[A]n insurer must defend a complaint against its insured until it is clear that the claim is not covered." *Id.* (*citing Am. Best Food*, at 405, 229 P.3d 693).

"The duty to defend generally is determined from the 'eight corners' of the insurance contract and the underlying

complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wash.2d 793, 803, 329 P.3d 59 (2014). The two exceptions to this rule favor the insured. *Id.* (*internal citations omitted*). "First, if coverage is not clear from the face of the complaint but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt on the duty to defend." *Id.* Second, if the allegations in the complaint are ambiguous or conflict with facts known to the insurer, "facts outside the complaint may be considered." *Id.* at 803–04, 329 P.3d 59. "These extrinsic facts may only be used to trigger the duty to defend; the insurer may not rely on such facts to deny its defense duty." *Id.* "[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Am. Best Food*, at 413, 229 P.3d 693.).

ASIC did not breach its duty to defend Highmark. In the complaint in the underlying case, the Plaintiffs asserted that Highmark "constructed 29 homes located within Valley Haven project development, in Fife, Washington" and "sold 29 homes located within Valley Haven project development, in Fife, Washington." Dkt. 17–7; *Hay v. Highmark, et al.*, Pierce County, Washington Superior Court case number 14-2-08793-0. The policy clearly and unambiguously excludes a housing project or development of 25 homes or more. There is no reasonable interpretation of the policy or complaint that could result in coverage. The duty to defend "is not triggered by claims that clearly fall outside the policy." *National Sur. Corp. v. Immunex Corp.*, 176 Wash.2d 872, 879, 297 P.3d 688 (2013).

In their Motion for Summary Judgment and Response to ASIC's motion, Plaintiffs assert that ASIC improperly used extrinsic evidence in making its determination to deny Highmark's tender. Dkts. 18 and 20–1. They point out that the information gained was used to determine that Highmark did, in fact, build all 29 homes and the timeframe in which the homes were built. *Id.* Plaintiffs cite no authority that an insurance company must defend if it chooses to investigate. Under Washington law, "[t]he insurer is entitled to investigate the facts and dispute the insured's interpretation of the law..." *Am. Best Food*, at 405, 229 P.3d 693. It is only if "there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Id.*

ASIC's motion for summary dismissal of the claim for breach of the duty to defend should be granted, Plaintiffs' motion for summary judgment on the claim should be denied, and the claim dismissed.

### D. CLAIMS FOR THE TORT OF BAD FAITH

██ "An insurer acts in bad faith if the refusal to defend was unreasonable, frivolous, or unfounded. Thus, an insurer takes a great risk when it refuses to defend on the basis that there is no reasonable interpretation of the facts or the law that could result in coverage." *Xia*, at 6, 400 P.3d 1234 (*internal quotations and citations omitted*).

██ ASIC's motion for summary dismissal of the claim for bad faith should be granted and the claim dismissed. "When an insurer correctly denies a duty to defend, there can be no bad faith claim based on that denial." *United Svcs. Auto Ass'n v. Speed*, 179 Wash.App. 184, 203, 317 P.3d 532 (2014).

### E. CLAIMS FOR VIOLATIONS OF IFCA

Plaintiffs assert in their complaint that ASIC's failure to defend Highmark violates IFCA under RCW 48.30.015 and WAC 284–30–330. Dkt. 1.

Under IFCA, an insurance company owes a duty of good faith to its insured. RCW 48.30.010, *et seq.* An insurance company is prohibited from unreasonably denying a claim for coverage or a claim for benefits. RCW 48.30.015. WAC 284–30–330, contains a non-exclusive list of "unfair practices," which includes:

(1) Misrepresenting pertinent facts or insurance policy provisions.

(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies...

(4) Refusing to pay claims without conducting a reasonable investigation...

(5) Failing to affirm or deny coverage of claims within a reasonable time after fully completed proof of loss documentation has been submitted...

(13) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement...

A violation of WAC 284–30–330 constitutes a violation of RCW 48.30.015. RCW 48.30.015 (5)(a).

Plaintiffs' claim for violations of IFCA should be dismissed. Plaintiffs fail to point to evidence that ASIC violated any of the provisions of WAC 284–30–330, and so fail to show that RCW 48.30.015 was violated. Plaintiffs fail to show that ASIC breached its duty to defend or indemnify Highmark under the insurance policy. In so finding, the Court need not reach ASIC's alternative arguments, that Plaintiffs failed to provide it proper notice of a claim because the claim form was defective, or that Plaintiffs, as third party claimants, do not have a cause of action under IFCA because the statute only recognizes causes of action for first party claimants.

Plaintiffs' motion for summary judgment on their IFCA claims should be denied, ASIC's motion to summarily dismiss Plaintiffs' IFCA claims should be granted, and the claims dismissed.

## F.  CLAIM FOR VIOLATIONS OF CPA

To make a CPA claim, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986). "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id.*, at 786, 719 P.2d 531. " 'A violation of WAC 284–30–330 constitutes a violation of RCW 48.30.010(1), which in turn constitutes a per se unfair trade practice by virtue of the legislative declaration in RCW 19.86.170.' " *Perez–Crisantos v. State Farm Fire & Cas. Co.*, 187 Wash.2d 669, 685, 389 P.3d 476, 483 (2017)(*quoting Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 114 Wash.2d 907, 921, 792 P.2d 520 (1990)).

Plaintiffs' claims under the CPA should be dismissed. Plaintiffs advance the same arguments for their breach of the duty to defend and bad faith claims to support their CPA claims. They are equally unpersuasive. Plaintiffs fail to show that ASIC engaged in an "unfair or deceptive act or practice." Further, Plaintiffs failed to show that Highmark suffered an injury that was caused by ASIC's unfair act or practice. Plaintiffs' motion for summary judgment on their CPA claims should be denied, ASIC's motion to summarily dismiss Plaintiffs' CPA claims should be granted, and the claims dismissed.

## III.  ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant's Motion for Summary Judgment (Dkt. 14) **IS GRANTED;** and
- Plaintiffs' Motion for Summary Judgment (Dkt. 16, refiled as 20–1) **IS DENIED;**
- **THIS CASE IS DISMISSED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.