# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHAEL POOLE and VICKY POOLE, each individually and the marital community comprised thereof,<br><br>Appellants,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, a foreign insurance company,<br><br>Respondent. | No. 50140-6-II<br><br><br><br><br>PUBLISHED OPINION |

SUTTON, J. — Michael and Vicky Poole owned property with a house and an attached shop, as well as a separate barn, and maintained a homeowners' insurance policy with State Farm Fire & Casualty Company. In 2014, a fire destroyed the house, the attached shop, and the barn. The Pooles asserted a claim for the cost of rebuilding. State Farm denied coverage to build a stand-alone shop to replace the shop that had been attached to the Pooles' house at the time of the fire.

The Pooles filed a lawsuit against State Farm arguing that State Farm wrongfully denied their claim, acted in bad faith, and violated the Consumer Protection Act (CPA)—chapter 19.86 RCW. The Pooles also sought treble damages under the Insurance Fair Conduct Act (IFCA)— RCW 48.30.010, .015. The superior court granted summary judgment in State Farm's favor and dismissed the Pooles' claims. The Pooles appeal the superior court's order.

We hold that State Farm's policy is ambiguous regarding coverage for the Pooles' rebuild of a stand-alone shop and, therefore, that State Farm breached its contract in denying coverage for the shop. Consequently, the superior court erred in granting summary judgment in favor of State Farm on this breach of contract claim and we reverse that order. However, we hold that the superior court did not err in granting summary judgment on the Pooles' other breach of contract claims and we affirm that order. And we remand for the superior court to consider the Pooles' bad faith, CPA, and IFCA claims in light of our holding on coverage of the shop. Accordingly, we affirm in part, reverse, and remand for further proceedings consistent with this opinion.

FACTS

The Pooles owned property containing a house, an attached shop, and a barn. The Pooles' house had two stories with an attached shop space on the first floor. The dwelling/shop was approximately 4,000 square feet. Mr. Poole used the shop for his machinist work as part of his business. The Pooles' insured their property with State Farm.

I. FIRE AND REBUILDING OF STRUCTURES

On July 17, 2014, fire destroyed the Pooles' house, attached shop, and barn. After the fire, the Pooles rebuilt their house. The Pooles also rebuilt the shop as a stand-alone structure that included 2,160 square feet of enclosed space and an additional 3,200 square feet for space covered only by a roof. The Pooles also rebuilt the barn.

II.  STATE FARM POLICY PROVISIONS

The Pooles' State Farm policy covered the house and the attached shop as a "dwelling"

under the following definition:

SECTION I - COVERAGES

**COVERAGE A—DWELLING**

1. **Dwelling.**  We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**.
Dwelling includes:
a. structures attached to the dwelling[.]

Clerk's Papers (CP) at 139.  The following provision related to the dwelling extension provision

under the policy:

2. **Dwelling Extension**.  We cover other structures on the **residence premises**, separated from the dwelling by clear space.  Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

We do not cover other structures:

a. Not permanently attached to or otherwise forming a part of the realty;

b. Used in whole or in part for business purposes . . . .

CP at 139.[1]

The following section defined the loss settlement provisions under the policy:

**COVERAGE A—DWELLING**

**A1 – Replacement Cost Loss Settlement – Similar Construction.**

a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I—COVERAGES, COVERAGE A— DWELLING**, except for wood fences, subject to the following:

---

[1] The Pooles' barn is considered a dwelling extension under the policy.

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less.

CP at 144.

The Pooles' policy also included an "Option ID – Increased Dwelling Limit," which provided,

We will settle losses to damaged building structures covered under **COVERAGE A—DWELLING** according to the **SECTION I—LOSS SETTLEMENT** provision shown in the **Declarations**.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations**, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A—DWELLING Dwelling Extension**.

CP at 150.

The State Farm policy had limits of $230,748 for the dwelling and $52,823 for the dwelling extension. The Option ID coverage provided an additional $46,149.60 for the dwelling or $4,614.96 for the dwelling extension.

### III. POOLES' COVERAGE CLAIM

The Pooles notified State Farm of the fire on July 18, 2014. Under the policy terms, State Farm paid the Pooles the calculated actual cash value[2] of the dwelling, $230,126.71, and the actual cash value of the barn as a dwelling extension, $52,710.02.

The Pooles then began to rebuild their property. Ultimately, the Pooles decided to build a new residence, a stand-alone shop, and a new barn. State Farm maintained contact with the Pooles throughout the construction. The signed contracts State Farm received from the Pooles showed the cost of the residence was $183,848, the stand-alone shop cost was $154,346.08, and the cost of the barn totaled $47,000. [3]

In May 2015, State Farm sent the Pooles a letter stating that there was no coverage for rebuilding the shop because it was detached rather than attached to the house. As a result, State Farm did not pay the Pooles the small amount remaining under the dwelling coverage limits for the cost of rebuilding the shop. State Farm also declined to pay any part of the Option ID coverage for the cost of rebuilding the shop.

The Pooles then filed a notice for IFCA violations. The Pooles disputed State Farm's decision to not pay the additional amounts under the coverage limit or the Option ID coverage for the shop. State Farm sent the Pooles another letter explaining its position that the Option ID

---

[2] Actual cash value "is the replacement cost less allowance for reasonable depreciation based on the age and general condition of [the] property." CP at 161.

[3] The signed contracts State Farm received from the Pooles showed that the cost of the barn totaled $47,000, which was less than the actual cash value of the barn of $52,710.02 that State Farm already had paid.

coverage did not apply to the rebuilding of the stand-alone shop. State Farm responded further, explaining why there was no Option ID coverage and to document the claims handling history.

State Farm engaged in additional communications with the Pooles regarding additional payments for the house and the barn. When the Pooles contacted State Farm and advised that the rebuild was going to cost in excess of $450,000, the claims adjuster responded and "advised there was no documentation the dwelling or barn rebuild would exceed the actual cash value." CP at 126. The letter that the claims adjuster sent to the Pooles in October stated:

> In order for us to review what costs were incurred for the barn, please provide the specific invoices for the barn and mark on the invoice that they are for the barn. To date, we have received multiple pages of random invoices that do not mark what building they are for.

CP at 190. State Farm also reiterated that it was not considering the cost of building the separate stand-alone shop towards the cost of rebuilding the dwelling.

## IV. POOLES' LAWSUIT AGAINST STATE FARM

The Pooles filed a complaint against State Farm based on State Farm's denial of coverage for rebuilding the stand-alone shop and refusal to pay any additional amounts for the construction of the house and barn. In their complaint, the Pooles pleaded claims for breach of contract, bad faith, and violations of the CPA. They also requested treble damages under IFCA.

State Farm filed a motion for summary judgment dismissal on all claims. State Farm argued, in part, that it did not breach the insurance contract because it properly denied the Pooles' claim for the Option ID coverage on the rebuild of a stand-alone shop. In response to the motion, the Pooles argued that State Farm should have paid the Option ID dwelling coverage because the shop was part of the insured dwelling at the time of the fire. The response included the deposition

testimony of Dave Duray, a State Farm representative, who agreed that whether there would be coverage for a single structure that was rebuilt as two structures could be confusing. Duray noted that "reasonable people can disagree" as to whether the Option ID provision applied to the rebuilt, stand-alone shop. CP at 380.

In their response, the Pooles submitted additional documentation regarding the barn's construction costs. In addition, they included Duray's identification of an inconsistency in the estimates used to calculate the dwelling's actual cash value. In its reply, State Farm noted that with the additional information it could process the Pooles' outstanding claims on the house and barn. As a result, State Farm issued a check to the Pooles for the remaining amount of the dwelling policy limits ($621.29) and the dwelling extension policy limits for the barn ($112.98). State Farm also paid the Option ID dwelling extension policy limits of $4,614.96 for the barn.

The superior court granted State Farm's motion for summary judgment and dismissed all of the Pooles' claims with prejudice. The Pooles appeal.

## ANALYSIS

### I. LEGAL PRINCIPLES

We review an order granting summary judgment de novo. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Interpretation of an insurance contract is a question of law which we review de novo. *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 710, 375 P.3d 596 (2016).

We construe insurance policies as contracts. *Lui*, 185 Wn.2d at 710. We examine the policy "to determine whether under the plain meaning of the contract there is coverage." *Kitsap*

*County v. Allstate Ins. Co.*, 136 Wn.2d 567, 576, 964 P.2d 1173 (1998). "Terms undefined by the insurance contract should be given their ordinary and common meaning, not their technical, legal meaning." *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997). The insurance contract is construed as a whole, with the policy given a "'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Lui*, 185 Wn.2d at 710 (quoting *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 627, 881 P.2d 201 (1994)). We harmonize clauses that seem to conflict in order to give effect to all of the contract's provisions. *Lui*, 185 Wn.2d at 710.

We determine that a provision in an insurance contract is ambiguous when it is susceptible to two different but reasonable interpretations. *Lui*, 185 Wn.2d at 712. Any ambiguities are resolved against the insurer and in favor of the insured. *Lui*, 185 Wn.2d at 712.

## II. BREACH OF CONTRACT CLAIMS

### A. OPTION ID COVERAGE

The Pooles argue that the superior court erred by granting summary judgment dismissal of their breach of contract claim because State Farm wrongfully denied Option ID coverage for their rebuilt, stand-alone shop. Br. of App. at 14-25. Specifically, the Pooles argue that the Option ID coverage should apply to their rebuilt shop because the shop qualified as a "dwelling" for purposes of the policy at the time of the loss. Br. of App. at 14-25. We hold that the policy is ambiguous as to whether the Option ID coverage requires that a portion of a dwelling destroyed by fire be rebuilt as an attached structure. Accordingly, because we interpret policy ambiguities in favor of the insured, the Pooles are entitled to Option ID coverage for the costs of rebuilding the shop, and summary judgment on this issue was inappropriate.

The Pooles' homeowners' insurance policy provides that when the amount actually and necessarily spent to replace a damaged structure exceeds the policy's liability limit, State Farm will pay the Option ID coverage. Option ID coverage applies to a "dwelling," which includes the structure used principally as a private residence on the residence premises and "structures attached to the dwelling." CP at 139. It is undisputed that under this definition, the attached shop constituted a "dwelling" at the time of the fire. See Br. of Resp. at 19.

Because the attached shop was a dwelling at the time of the fire, under the plain language of State Farm's policy there was Option ID coverage for the shop. The Option ID provision stated that State Farm would pay amounts incurred to replace the dwelling (up to the Option ID policy limits) if the replacement cost exceeded the applicable limit of liability for dwelling coverage. CP at 150. However, State Farm's policy provided that it would pay only certain types of repair or replacement costs: "the cost to repair or replace with similar construction and for the same use" on the insured premises. CP at 144. The question here is whether the stand-alone shop and the attached shop were of "similar construction."

We can refer to dictionary definitions to determine the ordinary meaning of words in insurance policies. *Kitsap County*, 136 Wn.2d at 576. The two primary dictionary definitions of "similar" are "having characteristics in common: very much alike" and "alike in substance and essentials." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2120 (2002). In *Allemand v. State Farm Ins. Co.*, the court stated that "similar construction" means like or equivalent construction. 160 Wn. App. 365, 372, 248 P.3d 111 (2011).

The Pooles argue that the rebuilt, stand-alone shop and the original attached shop were of "similar construction." The two shops were alike in that they were constructed in the same style

9

and quality, and with the same type of building materials. And there is no dispute that they were used for the same purpose. The only difference was that one shop was attached to the house and one was not, which the Pooles argue does not mean that the two structures were not of similar construction.

State Farm argues that the fact that the rebuilt shop was detached and the pre-loss shop was attached necessarily means that they were not of similar construction. However, they do not claim that the rebuilt shop was different in style or quality or that it included different building materials. Instead, State Farm emphasizes that its policy expressly excluded detached structures from the definition of "dwelling." State Farm claims that it had an obligation to pay the cost of rebuilding a structure only if that rebuilt structure qualified as a dwelling.

However, the "dwelling" requirement in State Farm's policy addresses whether a structure is covered at the time of the loss. As stated above, there is no question that the attached shop was a dwelling at the time of the fire. The policy does not state that an insured can only recover reimbursement for building a replacement structure that meets the definition of a "dwelling" or that the replacement structure must be built as a dwelling after the loss. In addition, the policy does not expressly prohibit an attached structure that constitutes a dwelling at the time of the loss from being rebuilt as a stand-alone structure.

Giving the policy language its ordinary and usual meaning, it is unclear whether Option ID coverage applies to a structure that is part of a dwelling before the loss and is rebuilt as a stand-alone structure or whether the Option ID coverage applies only when an attached structure is rebuilt as another attached structure. The average person purchasing insurance would not know

which rebuilt structures were covered by the Option ID provision. Therefore, even if State Farm's interpretation of the policy language is reasonable, the Pooles' interpretation is also reasonable.

The uncertainty regarding the interpretation of State Farm's policy under the facts of this case is highlighted by the testimony of Duray, the State Farm representative. He admitted that whether there would be coverage for a single structure that was rebuilt as two structures could be confusing. And he admitted that "reasonable people can disagree" on whether the Option ID coverage would apply to a rebuilt, stand-alone shop. CP at 380. Although Duray's comments are not necessarily dispositive, they are instructive regarding how the average person purchasing the insurance would construe the Option ID coverage.

We hold that the Option ID provision is subject to two different, reasonable interpretations and therefore that the policy language is ambiguous. Consequently, we must construe the policy in favor of the Pooles. *Lui*, 185 Wn.2d at 712. Under the Option ID coverage, the Pooles are entitled to recover the costs they incurred, up to policy limits, in constructing the stand-alone shop.[4] Accordingly, we hold that the superior court erred in granting summary judgment in favor of State Farm regarding Option ID coverage for the rebuilt shop.

---

[4] State Farm paid Option ID coverage for the barn in the amount of $4,614.96, 10 percent of the Option ID policy limits, as provided for dwelling extensions. Option ID coverage for dwellings and dwelling extensions are stated in the alternative. Therefore, on remand the superior court should determine whether State Farm is entitled to offset that payment against the Option ID policy limits for dwellings.

B.      OTHER ALLEGED CONTRACT BREACHES

The Pooles also allege three other breach of contract claims. The Pooles claim that State Farm breached its policy because it initially failed to pay (1) the remaining $621.29 of the dwelling coverage policy limits, (2) the remaining $112.98 of the dwelling extension policy limits for the barn, and (3) the Optional ID dwelling extension policy limits of $4,614.96 for the barn. State Farm argues that there are no genuine issues of material fact on the breach of contract claims because State Farm has now paid these contested amounts.

The Pooles do not dispute that these amounts have now been paid. Whether State Farm's failure to pay these amounts prior to litigation supports a bad faith claim is a separate issue and is addressed below. However, because the amounts have now been paid, there are no genuine issues of material fact as to these breach of contract claims. Accordingly, we hold that the superior court did not err by granting State Farm's motion for summary judgment dismissal on the Pooles' remaining breach of contract claims.

## III.  EXTRA-CONTRACTUAL CLAIMS

The Pooles also argue that the superior court erred by granting State Farm's motion for summary judgment dismissal of their bad faith, CPA, and IFCA claims. Specifically, the Pooles argue that State Farm acted in bad faith by denying the Option ID coverage for the rebuilt shop and by mishandling their claims for dwelling coverage for the house, dwelling extension coverage for the barn, and Option ID coverage for the barn.

The superior court's grant of summary judgment on the Pooles' extra-contractual claims regarding Option ID coverage for the rebuilt, stand-alone shop apparently was based on the court's ruling that the Pooles were not entitled to Option ID coverage for the shop. Because we hold that the superior court erred regarding Option ID coverage for the shop, we remand for the court to address the Pooles' bad faith, CPA, and IFCA claims.

Further, it is unclear from the record whether the superior court's grant of summary judgment on the Pooles' extra-contractual claims regarding State Farm's handling of their other claims was based on the court's ruling that the Pooles were not entitled to Option ID coverage for the shop. Therefore, we remand for the superior court to address these claims as well.

On remand, both parties will be free to file renewed summary judgment motions on the Pooles' bad faith, CPA, and IFCA claims.

CONCLUSION

We hold that State Farm's policy is ambiguous regarding coverage for the Pooles' rebuild of a stand-alone shop and, therefore, that State Farm breached its contract in denying coverage for the shop. Consequently, the superior court erred in granting summary judgment in favor of State Farm on this breach of contract claim and we reverse that order. However, we hold that the

No. 50140-6-II

superior court did not err in granting summary judgment on the Pooles' other breach of contract claims and we affirm that order. And we remand for the superior court to consider the Pooles' bad faith, CPA, and IFCA claims in light of our holding on coverage of the shop. Accordingly, we affirm in part, reverse, and remand for further proceedings consistent with this opinion.

SUTTON, J.

We concur:

MAXA, C.J.

JOHANSON, J.

14