# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ARTEM CHEBAN,<br><br>        Appellant,<br><br>        v.<br><br>STATE FARM FIRE AND CASUALTY<br>COMPANY, a foreign insurance<br>company,<br><br>        Respondent. | No. 77925-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: August 12, 2019 |

APPELWICK, C.J. — An uninsured driver damaged Cheban's 2014 Audi. Cheban made a claim to State Farm under his policy's underinsured motorist (UIM) coverage. Cheban filed suit against State Farm, and then filed a motion for partial summary judgment, requesting an order stating that his UIM policy covers loss of use. The district court denied Cheban's motion for summary judgment and dismissed his claim for loss of use damages. The superior court affirmed the decision of the district court. Because the UIM policy language is ambiguous, it should be interpreted in favor of the insured. Accordingly, we reverse the superior court's order and remand for further proceedings.

## FACTS

On June 13, 2016, an uninsured motorist damaged Artem Cheban's 2014 Audi. Cheban's car was insured by State Farm Fire and Casualty Company Policy

No. 208 7931-B15-47A. The policy contained UIM property damage coverage, which provides in part,

Insured means:

1. you;

2. resident relatives;

3. any other person while occupying:

   a. your car; or

   b. a newly acquired car.

. . . .

4. any person entitled to recover compensatory damages as a result of property damage of an insured as defined in items 1., 2., or 3. above.

Property damage means physical damage to or destruction of:

1. your car or a newly acquired car; or

2. property owned by an insured while that property is in the passenger compartment of your car or a newly acquired car.

. . . .

Insuring Agreement

We will pay compensatory damages for property damage an insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle. The property damage must be caused by an accident that involves the operation, maintenance, or use of an underinsured motor vehicle as a motor vehicle.

(Boldface omitted.)

The policy also provides,

Limits — Car Rental and Travel Expenses Coverage

1. Car Rental Expense

The limits for Car Rental Expense is shown on the Declarations Page under "Limit — Car Rental Expense — Each Day, Each Loss".

a. The limit shown under "Each Day" is the most we will pay for the daily rental charge. If:

. . . .

(2) a percentage amount is shown, then we will pay that percentage of the daily rental charge.

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most we will pay for Car Rental Expense incurred as a result of any one loss.

(Boldface omitted.)

According to the declarations page, Cheban's policy includes car rental and travel expenses coverage, which provides that State Farm will pay 80 percent of the daily rental charge up to $1,000 for any one loss. The policy defines "daily rental charge" as the sum of the daily rental rate, mileage charges, and related taxes.

State Farm paid Queen City Auto Rebuild Inc. to repair the physical damage to Cheban's car. Cheban asserted that the damage to the vehicle left him without the use of his Audi for 47 days. State Farm paid a part of the $26.24 daily charge for 41 of those 47 days that Cheban rented a Ford Fusion. Cheban paid $254.73 out-of-pocket, and State Farm paid $975.40.

Cheban then filed suit in King County District Court, claiming that his vehicle suffered diminished value[1] and that he was entitled to recover for his loss of use

---

[1] Below, State Farm did not state that it refused to pay diminished value under its policy, but that Cheban had failed to prove that his car sustained a diminution of value. Cheban represented to the trial court, "State Farm acknowledges that it must pay diminished value if [] Cheban proves his claim." Diminished value is not an issue on appeal.

under the terms of the UIM coverage. Cheban filed a motion for partial summary judgment, requesting an order stating that his UIM policy covers loss of use, "because even if the policy's insuring agreement fails to include that damage as a benefit recoverable, the coverage deficit is void as contrary to public policy." He also asserted that his auto policy "covers loss of use by its terms." In his motion, Cheban asserted, "Renting a comparable vehicle from Enterprise[ Rent-A-Car] would have cost $20,444.60 before tax ($23,961.07 after tax)." He claimed that he had "suffered $22,985.67 unresolved loss of use damages."

The district court denied Cheban's motion for summary judgment and dismissed his claim for loss of use damages. Cheban moved for reconsideration, which the district court also denied. Cheban appealed the ruling to the King County Superior Court. The superior court affirmed the decision of the district court. Cheban sought discretionary review, which this court granted.

## DISCUSSION

Cheban argues that State Farm's policy provides coverage for loss of use. Cheban also requests that this court award him attorney fees.

I.   Standard of Review

An appellate court reviews de novo a grant of summary judgment. Bostain v. Food Express, Inc., 159 Wn.2d 700, 708, 153 P.3d 846 (2007). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id. Facts and reasonable inferences therefrom are viewed most favorably to the nonmoving party. Id.

4

Interpretation of an insurance contract is a matter of law. McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 730, 837 P.2d 1000 (1992). Where there are no relevant facts in dispute, the applicable standard of review is de novo review of lower court decisions regarding insurance coverage. Id. at 730-31.

II.    State Farm Policy

Cheban asserts that the State Farm policy provides coverage for loss of use.

In Washington, insurance policies are construed as contracts. Am. Nat'l Fire Ins. Co. v. B & L Trucking & Const. Co., Inc., 134 Wn.2d 413, 427, 951 P.2d 250 (1998). An insurance policy is construed as a whole, with the policy being given a "'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" Id. (quoting Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co., 124 Wn.2d 618, 627, 881 P.2d 201 (1994)). If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. Id. at 428. If the clause is ambiguous, however, extrinsic evidence of the intent of the parties may be relied upon to resolve the ambiguity. Id. Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured. Id. A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable. Id.

State Farm asserts that "the policy language is clear and unambiguous: property damage is defined as 'physical damage to or destruction of' [the] vehicle in question." State Farm contends that the "ordinary understanding of physical

damage is damage that is tangible and capable of being perceived by the senses." And, it asserts, "Loss of use is something that is not tangible and not concrete. Consequently, it cannot be 'physical' under any reasonable definition." State Farm further critiques Cheban's policy interpretation for improperly reading the phrase "compensatory damages" separately from the phrase "property damage." It points to the "Insuring Agreement" section in the UIM coverage, which states,

> We will pay compensatory damages for property damage an insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle. The property damage must be caused by an accident that involves the operation, maintenance, or use of an underinsured motor vehicle as a motor vehicle.

(Boldface omitted.) It claims that "compensatory damages are for the property damage — which is defined as physical damage or destruction of the vehicle. The policy provides for compensation for losses arising out of physical damage to the vehicle. It does not provide for monetary compensation for the intangible claim of loss of use." (Boldface omitted.)

Cheban argues that State Farm's interpretation ignores the phrases "compensatory damages for" and "compensatory damages as a result of," which precede and modify "property damage" in the coverage. And, Cheban asserts that "well-established rules of construction and prior case law prevent giving the phrase 'compensatory damages' the same meaning as the defined bolded term '[p]roperty [d]amage' found in the same sentence." He asserts that, when the terms are read together, State Farm's coverage provides "the same elements of damages that would be recoverable from the at fault tortfeasor under Washington law."

6

(Emphasis omitted.) Citing RCW 4.56.250(1)(a),[2] he claims that this includes compensation for loss of use. As authority of what is recoverable from an at fault tortfeasor, he relies on RCW 4.56.250(1), which states, "As used in this section, the following terms have the meanings indicated unless the context clearly requires otherwise." RCW 4.56.250(1)(a) provides, "'Economic damages' means objectively verifiable monetary losses, including medical expenses, loss of earnings, burial costs, loss of use of property, cost of replacement or repair, cost of obtaining substitute domestic services, loss of employment, and loss of business or employment opportunities."[3]

Courts consider the insurance policy as a whole and give effect to all of the contract's provisions. Kut Suen Lui v. Essex Ins. Co., 185 Wn.2d 703, 710, 375 P.3d 596 (2016). A court considers an insurance contract in its entirety and cannot interpret a phrase in isolation. Moeller v. Farmers Ins. Co. of Wash., 173 Wn.2d 264, 271, 267 P.2d 998 (2011).

"Damages" means compensating loss or damage. Overton v. Consol. Ins. Co., 145 Wn.2d 417, 428, 38 P.3d 322 (2002). Under the State Farm policy, a

---

[2] In Sofie v. Fibreboard Corp., 112 Wn.2d 636, 669, 771 P.2d 711, 780 P.2d 260 (1989), the court held that the limit on noneconomic damages in RCW 4.56.250 is unconstitutional. This does not affect Cheban's use of the statute.

[3] This section from the chapter "Judgments—Generally" creates a limitation on noneconomic damages. The language of the section, which provides the statutory definition Cheban relies on, is for purposes of that section. It does not require its application elsewhere. The same definition is not found in the chapter requiring mandatory liability insurance for motor vehicles, chapter 46.30 RCW, or in the insurance title, Title 48 RCW. Nevertheless, our case law makes clear: loss of use is recoverable in tort as economic damages. See Holmes v. Raffo, 60 Wn.2d 421, 429-30, 374 P.2d 536 (1962) ("The rule with respect to loss of use of an automobile is that the owner may recover, as general damages, the use value of which he is deprived because of the defendant's wrongful act.")

person is entitled to recover compensatory damages as a result of property damage, and compensatory damages are for the property damage of the vehicle.

Division II of this court recently addressed the same issue in Kalles v. State Farm Mutual Automobile Insurance Co., 7 Wn. App. 2d 330, 433 P.3d 523 (2019). Kalles had UIM coverage through State Farm Mutual. Id. at 331. The insuring agreement in Kalles's policy stated, "'[State Farm] will pay compensatory damages for property damage an insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle.'" Id. (boldface omitted) (alteration in original). The UIM policy defined "property damage" as

> "physical damage to or destruction of:
> 1. your car or a newly acquired car, or
> 2. property owned by an insured while that property is in the passenger compartment of your car or a newly acquired car."

Id. at 331-32 (boldface omitted). State Farm paid for the repairs to Kalles's vehicle, but "declined to pay under the UIM coverage provisions for a car rental due to the loss of use of Kalles's vehicle while it was being repaired." Id. at 332.

Kalles filed a complaint against State Farm based on a dispute over the diminished value of the vehicle and whether Kalles's UIM coverage included loss of use of his vehicle. Id. Kalles filed a motion for partial summary judgment, arguing that loss of use was included in his UIM coverage. Id. The superior court denied Kalles's motion for partial summary judgment. Id. Reversing the superior court, this court stated,

> Under the UIM policy language, State Farm is obligated to pay "compensatory damages for property damage." Kalles argues the UIM insuring agreement should be read to "'provide/include the same elements of damages that would be recoverable from the at-

fault tortfeasor under Washington law'" and that "'for property damage'" acts as triggering language rather than limiting language. We agree that Kalles's interpretation is reasonable from the perspective of an average person purchasing insurance.

"Compensatory damages" means "damages awarded to make good or compensate for an injury sustained." "Compensatory damages" read together with the language "is legally entitled to recover from the owner or driver of an underinsured motor vehicle" would reasonably lead an average person purchasing insurance to believe that the policy covered all damages resulting from the property damage caused by the underinsured motorist—including loss of use. Therefore, the provision is at least ambiguous and must be interpreted in favor of the insured.

Id. at 334-35 (internal citations omitted) (quoting MERRIAM-WEBSTER'S THIRD NEW

INTERNATIONAL DICTIONARY at 463 (1961)).

This court also reasoned that the UIM policy's "Deciding Fault and Amount"

section further supported Kalles's interpretation. Id. at 335. The "Deciding Fault

and Amount" section provided,

"1. a. The insured and [State Farm] must agree to the answers to the following two questions:

(1) Is the insured legally entitled to recover compensatory damages from the owner or driver of the underinsured motor vehicle?

(2) If the answer to 1.a.(1) above is yes, then what is the amount of compensatory damages that the insured is legally entitled to recover from the owner or driver of the underinsured motor vehicle?"

Id. (boldface omitted) (alteration in original). And, the policy defined an "insured"

as "'any person entitled to recover compensatory damages as a result of property

damage of an insured.'" Id. The court reasoned, "Reading these sections, along

with the insuring agreement, would lead an average purchaser of insurance to

fairly, reasonably construe the policy as providing coverage for the amounts he or

she would be able to recover directly from the owner or driver of the uninsured vehicle." Id. It found that Kalles's interpretation was reasonable, and that the policy was "ambiguous at best." Id. It held, "Because the language of the UIM policy is ambiguous, it must be interpreted in favor of Kalles to cover loss of use resulting from property damage caused by an uninsured/underinsured motorist." Id. at 335-36.

The policy language here is identical to that in Kalles, and we agree with the reasoning of Kalles. Both parties have put forth reasonable interpretations of the policy language, "We will pay compensatory damages for property damage an insured is legally entitled to recover." (Boldface and italics omitted.) From the perspective of an average person purchasing insurance, the phrase could be reasonably construed as providing coverage for the amounts he or she would be able to recover directly from the owner or driver of the uninsured vehicle. State Farm's interpretation—that it will compensate the insured for only physical damage to his or her car—is also reasonable. But, because the phrase is ambiguous, it must be interpreted in favor of Cheban to cover loss of use resulting from property damage caused by an uninsured/underinsured motorist.[4] Therefore, the trial court erred by affirming the order denying Cheban's motion for partial summary judgment.[5]

III. Attorney Fees

---

[4] Because we find that Cheban's policy provides coverage for loss of use, we do not reach Cheban's argument that, if the policy language were to exclude loss of use, it contravenes RCW 48.22.030.

[5] When hearing this case, neither the district nor superior court had the benefit of the Kalles decision, published in January 2019. 7 Wn. App. 2d 330.

Cheban requests that this court award him attorney fees. Citing Olympic Steamship Co. v. Centennial Insurance Co., 117 Wn.2d 37, 53, 811 P.2d 673 (1991), he states that an insured "can in some situations recover lodestar fees incurred by a wrongful denial of coverage."

In Olympic Steamship the court held, "[A]n award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." Id. at 53. RAP 18.1(a) authorizes an award of fees on appeal if applicable law grants to a party the right to recover reasonable attorney fees. Id.

State Farm argues that, unlike Olympic Steamship, this case does not include a refusal to defend. It asserts that it has acknowledged Cheban's claim and does not dispute that it is covered under the UIM provisions of his policy. And, it argues that, because the sole issue is interpretation of the policy language, this court should decline Cheban's request for attorney fees.

The State Supreme Court has expanded on the Olympic Steamship rule. See Leingang v. Pierce County. Med. Bureau, Inc., 131 Wn.2d 133, 147, 930 P.2d 288 (1997). In Leingang, the court explained,

> If a claim is denied on the basis of an alleged lack of coverage and a court later determines there is coverage, then the case would fall under the rule of Olympic Steamship. The holding of Olympic Steamship and Dayton[6] is that an insured is entitled to attorney fees if the insured litigates an issue of coverage, but not if the issue is merely a dispute about the value of a claim. The present case is like

---

[6] Dayton v. Farmers Ins. Group, 124 Wn.2d 277, 876 P.2d 896 (1994).

the McGreevy[7] case in that the insurer admitted there was some coverage but disputed the scope of the coverage. Coverage disputes include both cases in which the issue of any coverage is disputed and cases in which "the extent of the benefit provided by an insurance contract" is at issue.

Id. (quoting McGreevy, 128 Wn.2d at 33). In Leingang, the dispute was over coverage as it was the claim of the insurer that the exclusion at issue denied possibility of recovery under any foreseeable facts. Id. The court held that the insurer was liable for the reasonable attorney fees its insured incurred in its successful effort to overcome the asserted policy exclusion from coverage. Id. at 147-48.

In Greengo v. Public Employees Mutual Insurance Co., the court reiterated that a party is entitled to attorney fees when an insurer wrongfully denies "coverage," as distinguished from the situation where "coverage" is conceded but the claim fails, or recovery is diminished on its factual merits. 135 Wn.2d 799, 817, 959 P.2d 657 (1998). The Greengo court answered "the threshold coverage question, while reserving the ultimate factual entitlement to a monetary recovery against the insurer, as well as the amount of that recovery, to remand." Id. at 817-18. But, the court found that awarding reasonable attorney fees at that stage was appropriate. Id.

Cheban had to pursue legal action to obtain a determination that the policy provides coverage for loss of use. Pursuant to Greengo, awarding Cheban appellate attorney fees at this stage of the proceeding is appropriate.

---

[7] McGreevy v. Oregon Mut. Ins. Co., 128 Wn.2d 26, 904 P.2d 731 (1995), overruled on other grounds by Panorama Vill Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wn.2d 130, 26 P.3d 910 (2010).

No. 77925-7-I/13

We reverse and remand for further proceedings.

Appelwick, C.J.

WE CONCUR:

Smith, J.          Andrus, J.

13