STATE OF MINNESOTA

IN SUPREME COURT

A13-0124

Court of Appeals

Page, J.
Took no part, Stras, J.

Cedar Bluff Townhome Condominium
Association, Inc.,

        Respondent,

vs.

Filed: December 17, 2014
Office of Appellate Courts

American Family Mutual Insurance Company,

        Appellant.

_____

E. Curtis Roeder, Anthony T. Smith, Alexander M. Jadin, Roeder Smith Jadin, PLLC, Bloomington, Minnesota, for respondent.

Mark R. Bradford, Jeanne H. Unger, Bassford Remele, P.A., Minneapolis, Minnesota, for appellant.

William M. Hart, Katherine A. McBride, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota, for amicus curiae Insurance Federation of Minnesota.

Jenneane L. Jansen, Kris E. Palmer, Erica G. Strohl, Jansen & Palmer, LLC, Minneapolis, Minnesota, for amicus curiae Minnesota Association for Justice.

Adina R. Bergstrom, Brenda M. Sauro, Sauro & Bergstorm, PLLC, Woodbury, Minnesota, for amicus curiae Minnesota Association of Public Insurance Adjusters, LLC.

Beth A. Jenson Prouty, Stephen M. Warner, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota, for amicus curiae Property Casualty Insurers Association of America.

Christopher H. Yetka, Barnes & Thornburg, LLP, Minneapolis, Minnesota, for amicus curiae United Policyholders.

1

_____

S Y L L A B U S

The appraisal panel did not err in determining that the replacement of respondent's damaged siding panels with siding of comparable material and quality required replacement of all of the siding on respondent's buildings to achieve a reasonable color match.

Affirmed.

O P I N I O N

PAGE, Justice.

Appellant American Family Mutual Insurance Company (American Family) insured property managed by respondent Cedar Bluff Townhome Condominium Association (Cedar Bluff). The insurance policy covered 20 multi-unit residential buildings. Cedar Bluff filed a claim with American Family for hail damage to the siding on each of the 20 buildings. A dispute arose as to whether the policy language providing for the replacement of "damaged property with other property . . . [o]f comparable material and quality" requires the replacement of all siding, even undamaged siding, in order to provide a color match. Because the appraisal panel properly concluded that siding of comparable material and quality required a reasonable color match between the damaged and undamaged siding, we affirm the court of appeals' decision.

During a hail storm in October 2011, all 20 of Cedar Bluff's townhome buildings sustained some damage. The roofs on all of the buildings needed to be replaced, and at least one siding panel on each building sustained damage. Each siding panel is 15 square

feet in size. Eleven of the 20 buildings had three or fewer damaged panels. The building with the most hail damage had 10 damaged panels, and one building had only one damaged panel. At the time of the hail storm, the siding was approximately 11 years old, and the color of the panels had faded. Replacement panels were available from the same manufacturer with the same specifications, but the panels were not available in the same color.

Cedar Bluff submitted a claim under its businessowners' policy to American Family for the hail damage to the property. Under the policy, American Family was obligated to pay for "*direct physical loss of or damage to Covered Property* at the premises . . . caused by or resulting from any Covered Cause of Loss." (Emphasis added.) "Covered Property" is broadly defined in the policy as the "[b]uildings, meaning the buildings and structures at the premises described in the Declarations." The policy also included a "Loss Payment" clause specifying how American Family would fulfill its obligation with respect to a covered loss or damage. Under the Loss Payment clause, American Family agreed, at its option, to:

(1) Pay the value of lost or damaged property;
(2) Pay the cost of repairing or replacing the lost or damaged property;
(3) Take all or any part of the [damaged] property at an agreed or appraised value; or
(4) Repair, rebuild or replace the property with other property of like kind and quality . . . .

American Family elected the second payment option under the Loss Payment clause.[1]

Moreover, the policy provides that American Family was to "determine the value of Covered Property . . . [a]t replacement cost." Replacement cost is to be determined based on the cost to replace "the lost or damaged property with other property . . . [o]f *comparable material and quality*." (Emphasis added.)

American Family did not dispute that the hail storm damaged at least one panel of siding on all 20 buildings; however, a dispute arose regarding the value of the loss for purposes of calculating the replacement cost. According to Cedar Bluff, all of the siding on each building had to be replaced because there would be a color mismatch with the existing panels if only the damaged siding panels were replaced. In other words, "comparable material and quality" required a color match between the damaged and undamaged siding panels. American Family disagreed, claiming that the policy only required replacement of the individual panels actually damaged by the hail storm. American Family also noted that an exact color match was not possible even if the replacement panels were available in the original color because the color of the original siding on the buildings had faded over time. American Family offered to pay for

---

[1] American Family chose the second payment option under the Loss Payment clause, namely to pay the replacement cost of the damaged property, based on the cost of "other property . . . [o]f comparable material and quality." American Family, however, uses the phrase "other property . . . [o]f comparable material and quality" interchangeably with the phrase "other property of like kind and quality." The latter phrase comes from the fourth option under the Loss Payment clause, which, although also presenting a replacement option, American Family did not elect to use. We therefore focus on the meaning of the phrase "other property . . . [o]f comparable material and quality" because that is the option that American Family chose to use for this coverage dispute.

4

replacement panels that were either slightly darker or slightly lighter in color than the original panels.

Because Cedar Bluff and American Family were unable to agree on the amount of the loss, Cedar Bluff demanded an appraisal, as provided for in the policy. After holding a hearing, at which it received evidence and heard arguments, and after visiting the site of the 20 buildings, the appraisal panel found that the original siding on the buildings could be " 'matched' in terms of the same siding being commercially available from the same manufacturer and with the same model name, . . . texture, size and installation methods," but "could not be matched in terms of color." Based on the color difference, the panel concluded that "there was not a reasonable match available for the existing siding materials." The panel then issued an award for "a total replacement of the siding" in the amount of $361,108 for the replacement cost of property of comparable material and quality. In making its award, the appraisal panel acknowledged that American Family's focus on the replacement cost value of the damaged siding panels "would be correct if the subject policy did not require such a color match," but that a color mismatch was "not a repair or replacement with comparable materials of like kind and quality." American Family refused to pay the appraisal award because it believed the award was based on the appraisal panel's unauthorized coverage determinations. Cedar Bluff subsequently filed an action in district court seeking to confirm the appraisal award. American Family counterclaimed, seeking a declaratory judgment that the appraisal panel exceeded its authority.

The district court granted summary judgment to American Family. The court concluded that under "the plain language of the policy," American Family "is not required to pay for the cost of replacing property that has not experienced direct physical loss or damage" and therefore "is not obligated to pay for the cost of replacing the undamaged siding." In addition, the court held that American Family was "not mandated to pay for siding that provides an exact 'color match' to the original siding" because "the term 'color match' is not contained anywhere within the policy."

The court of appeals reversed. *Cedar Bluff Townhome Condo. Ass'n v. Am. Family Mut. Ins. Co.*, No. A13-0124, 2013 WL 6223454 (Minn. App. Dec. 2, 2013). The court of appeals explained that the appraisal panel "necessarily interpreted the phrases 'replace . . . with other property of like kind and quality' and 'replace . . . with other property . . . [o]f comparable material and quality,' " and that under *Quade v. Secura Ins.*, 814 N.W.2d 703, 706-07 (Minn. 2012), "the appraisal panel had authority to consider the meanings of those phrases when determining the amount of loss." *Cedar Bluff*, 2013 WL 6223454, at *3. The court of appeals concluded that "the district court erred by refusing to accept the factual determinations of the appraisal award." *Id.* at *3. However, the court of appeals also held that the question of coverage under the policy was properly before the court because under *Quade* " 'an appraiser's liability determinations are not final and conclusive' and 'the decision of the appraisers will be subject to review.' " *Cedar Bluff*, 2013 WL 6223454, at *3 (quoting *Quade*, 814 N.W.2d at 707-08). The court of appeals added that the value of the covered property was to be "determined based on the cost to replace the 'damaged property with other property . . . [o]f

6

comparable material and quality,' " and determined that "a reasonable person could understand that 'comparable material' means material that is the same color as the damaged property." *Id*. at *4. We granted American Family's petition for further review.

I.

Although this is an appeal from a grant of summary judgment, we granted review to determine if the appraisal panel properly concluded that American Family's obligation to replace damaged property with property of comparable material and quality required it to replace damaged and undamaged property to achieve a color match. This requires us to interpret the provisions of the insurance policy. We interpret insurance contracts de novo, *see Quade v. Secura Ins.*, 814 N.W.2d 703, 705 (Minn. 2012) ("The interpretation of insurance contracts is a question of law."), applying general principles of contract law, *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). Furthermore, we have held that an appraisal panel "may not construe the [insurance] policy or decide whether the insurer should pay." *Quade*, 814 N.W.2d at 706; *see also* 15 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 213:44 (3d ed. 1999) ("An appraiser can make no legal determinations."). However, we have also held that " 'questions of law or fact, which are involved as mere incidents to a determination of the amount of loss or damage,' are appropriate to resolve in an appraisal in order to ascertain the 'amount of loss.' " *Quade*, 814 N.W.2d at 707 (quoting *Itasca Paper Co. v. Niagara Fire Ins. Co.*, 175 Minn. 73, 79, 220 N.W. 425, 427 (1928)).

Here, the appraisal panel awarded $361,108 for the replacement cost value of the damaged siding. The policy language required replacement cost to be determined based on the cost to replace "the lost or damaged property with other property . . . [o]f *comparable material and quality*." (Emphasis added.) American Family argues that "comparable" means similar, not "identical," and therefore it was not obligated to replace all of the siding panels, including the ones that were undamaged, simply because it was unable to replace the damaged siding panels with panels that were an identical color match to the originally installed panels. Cedar Bluff argues that "comparable" in this context requires a color match; and because American Family could not replace the damaged siding panels to provide a color match, it was obligated to replace all of the damaged siding panels. Thus, in order to ascertain whether the appraisal panel properly awarded a replacement cost value based on the cost of replacing all the siding, we must first determine the meaning of "comparable material and quality."

When interpreting insurance contracts, the policy must be construed as a whole, beginning with the plain and ordinary meaning of the policy's terms, as well as "what a reasonable person in the position of the insured would have understood the words to mean." *Midwest Family*, 831 N.W.2d at 636 (citation omitted) (internal quotation marks omitted). The word "comparable" means "[s]imilar or equivalent." *The American Heritage Dictionary of the English Language* 375 (5th ed. 2011); *see also Webster's Third New International Dictionary* 461 (1976) (defining "comparable" as "[s]uitable for matching, coordinating, or contrasting:  Equivalent, similar"). American Family concedes that the policy requires some degree of color match, noting that it cannot "meet

8

its obligation by paying for red siding on an otherwise yellow building" because "[n]o reasonable person would conclude that red siding is comparable to yellow siding." We agree. On the other hand, the plain meaning of the phrase "comparable material and quality" is material that is *suitable* for matching. Thus, we conclude that on the spectrum of resemblance, "comparable material and quality" requires something less than an identical color match, but a reasonable color match nonetheless. This determination is consistent with case law in other jurisdictions. *See*, *e.g., Republic Underwriters Ins. Co. v. Mex-Tex, Inc*., 150 S.W.3d 423, 425 (Tex. 2004) (interpreting "comparable material and quality" to "allow [ ] more leeway" than the term "identical"). *Cf. Farmers Auto. Ins. Ass'n. v. Union Pac. Ry. Co.*, 756 N.W.2d 461, 471 (Wis. Ct. App. 2008) (explaining that " 'like kind and quality' " does not require "brick-by-brick, fixture-by-fixture, or window-by-window congruence").

Therefore, in accordance with the plain meaning of the policy language, we construe the phrase "comparable material and quality" to mean a reasonable color match between new and existing siding when replacing damaged siding.

## II.

Having defined "comparable material and quality," we turn next to the question of whether the appraisal panel interpreted "comparable material and quality" to require an exact color match or merely a reasonable color match. Upon weighing the evidence, the panel found that "there was not a reasonable match available for the existing siding materials but there is a reasonable match for the existing fascia material." The panel also

9

noted that American Family's $6,800 estimate for the replacement cost value "would be correct if the subject policy did not require such a color match."

American Family contends that the appraisal panel interpreted the word "comparable" to require an "exact color match," or in essence an identical color match. To support its claim, American Family points to one of the appraisers' statements at the August 8, 2011, appraisal hearing:

> And so for me and the panel, what we have to decide is under this policy is the association required to accept a slightly lighter or slightly darker material. And we could actually issue an opinion that says the loss adjustment is correct except to the extent of a matching issue and then issue our decision on the matching. And then you guys can go to the district court and whether [sic] figure out if this witness's definition of like, kind and quality is the correct one.

According to American Family, because slightly lighter or slightly darker was not good enough in this instance, the panel, therefore, had to conclude that "comparable" meant identical.

We disagree. First, this contention is not supported by the record because neither the words "identical color match" nor "exact color match" appear in the appraisal award. In contrast, the panel used the words "reasonable match" in the appraisal award. This wording suggests that the appraisal panel did not interpret "comparable" to mean identical or "exact." Second, we believe that it was logical for the panel to conclude that it "could actually issue an opinion that says the loss adjustment is correct except to the extent of a matching issue" because the original siding on the buildings could be matched in almost every specification, except color. Model, texture, size, and installation method posed no issue in this case—the only issue was color mismatch. Third, we understand

the panel's reference to American Family's estimate being correct "if the subject policy did not require such a color match" to denote the panel's description of a type or degree of the color match. In particular, we note that the word "such" precedes the words "a color match." And, considering the panel's use of the words "reasonable match" throughout the appraisal award, we interpret the above sentence to mean that American Family's estimate would have been correct if the policy did not require a *reasonable* color match. Accordingly, we conclude that the appraisal panel applied the correct legal standard.

III.

Having concluded that the appraisal panel applied the correct legal standard, we now turn to the question of what property must be replaced. American Family argues that the policy does not require it to replace the individual siding panels that did not sustain direct physical loss or damage from the hail storm. In support of this argument, American Family notes that under the policy it agreed to pay for "direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss." The appraisal panel concluded, and American Family concedes, that the replacement siding panels could not be matched in terms of color. Accordingly, the question to be answered is whether the color mismatch constitutes "direct physical loss of or damage to Covered Property."

The term "direct physical loss of or damage" is not defined in the policy. According to American Family, the term "physical damage" means "a distinct, demonstrable, and physical alteration," and "physical loss" means "those situations where

11

an external force has rendered the property unsafe or unusable, even though the property remains physically unchanged."[2]  Because of the color mismatch resulting from the inability to replace the hail-damaged siding panels with siding of "comparable material and quality," the covered property—Cedar Bluff's "buildings"—has sustained a "distinct, demonstrable, and physical alteration."  Thus, we conclude that the covered property sustained a covered loss.  As a result of the dispute between Cedar Bluff and American Family, the appraisal panel was selected to determine the amount of loss.  Here, the appraisal panel held a hearing at which it considered all of the evidence, heard from witnesses, and examined the damaged property in person.  Because there is a strong public policy in Minnesota favoring appraisals, *see Quade*, 814 N.W.2d at 707, we give deference to the appraisal panel's factual determination as to the amount of loss.  As noted previously, the appraisal panel determined the amount of loss to be $361,108.  Given our deferential standard of review, we conclude that the district court erred when it refused to confirm the appraisal panel's award.[3]

---

[2]  Because we conclude that American Family's arguments fail under its definition of the term "physical damage," we need not independently define that term.

[3]  As a final matter, we note that by order of April 29, 2014, we deferred consideration of a motion by Cedar Bluff to strike portions of American Family's brief.  More specifically, Cedar Bluff moved to strike certain materials from American Family's appendix, including the transcript from the appraisal and a Minnesota Department of Commerce informational article.  Cedar Bluff acknowledges, however, that certain pages from the transcript are a part of the trial record.  To that extent, we deny Cedar Bluff's motion.  As to those transcript pages and the Informational Bulletin that are not a part of the trial record, they are not properly before us on this appeal, Minn. R. Civ. App. P. 110.01, and therefore, we grant Cedar Bluff's motion to strike in part.

IV.

Of course, all storm-related property damage claims present their own facts. In this particular case, the spot damage to multiple siding panels on multiple buildings, along with the appraisal panel's assessment of the particular color mismatch, applied to the policy language at issue, lead to our conclusion that there is coverage. In summary, we hold that, under the terms of its insurance policy with American Family, Cedar Bluff is entitled to have all of the siding panels on each of its 20 buildings replaced. Consequently, we affirm the appraisal panel's award.

Affirmed.


STRAS, J., took no part in the consideration or decision of this case.