

# In the Missouri Court of Appeals Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| DEBORAH J. ALESSI, | ) | ED102261 |
| | ) | |
| Appellant, | ) | |
| | ) | Appeal from the Circuit Court |
| vs. | ) | of St. Charles County |
| | ) | 1311-CC00420 |
| | ) | |
| MID-CENTURY INSURANCE | ) | Honorable Stanley D. Williams |
| COMPANY, INC. | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | Filed: June 23, 2015 |

Deborah J. Alessi ("Alessi") appeals the trial court's grant of summary judgment in favor of Mid-Century Insurance Company, Inc. ("Mid-Century"). On appeal Alessi contends the trial court erred in finding that the contractual provisions of the policy were unambiguous. We reverse and remand for a trial in accordance with this opinion.

## Background

In April 2012, hail damaged the vinyl siding on the northern elevation of Alessi's residence in St. Charles, Missouri (the property). At the time of the damage, Alessi had an insurance policy (the policy) with Mid-Century for coverage of the property. Mid-Century paid Alessi $2,072.53, which was the actual cash value to replace the siding on the entire northern elevation of the property. However, because the original siding on the

property was no longer manufactured, Alessi was unable to replace the siding on the northern elevation with the same siding as on the other three elevations of the property. Alessi made a demand that Mid-Century replace the siding on all four elevations of the property, but Mid-Century refused. Alessi filed a claim for breach of contract and vexatious refusal to pay, arguing that hail damage to her property was the type of loss her policy was intended to cover, but that Mid-Century had refused to pay the total amount of losses in violation of the policy.

The policy provided in relevant part:

> We insure for accidental direct physical loss to property described in Coverage A [Dwelling] and B [Separate Structures].
> …
> Covered loss to Buildings under Coverage A and B will be settled at replacement cost without deduction for depreciation, subject to the following methods:
> (1) Settlement under replacement cost will not be more than the *smallest* of the following:
>   (a) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises.
>   (b) the amount actually and necessarily spent to repair or replace the building intended for the same occupancy and use.

Mid-Century moved for summary judgment. In its motion, Mid-Century asserted it was entitled to judgment as a matter of law on both claims, because, first, the policy limited its obligation to replacing "that part of the building damaged for equivalent construction and use on the same premises," and thus it was limited to paying the replacement cost for only the damaged portion of the siding. And second, the policy provided coverage only for direct physical loss, and only one side of the property had sustained direct physical loss. Alessi responded Mid-Century was not entitled to

2

judgment as a matter of law, because its policy stated that it would repair the damage "for equivalent construction and use on the same premises" required Mid-Century to re-side the entire house because "equivalent" siding was matching siding.

The trial court granted Mid-Century's motion for summary judgment, finding the policy did not cover siding replacement for Alessi's undamaged elevations on the property, and thus Mid-Century was entitled to judgment as a matter of law. This appeal follows.

## Standard of Review

Summary judgment is appropriate where the moving party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine issue of material fact. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially de novo. Cardinal Partners, L.L.C. v. Desco Inv. Co., 301 S.W.3d 104, 108 (Mo. App. E.D. 2010). A defending party is entitled to summary judgment when it shows the plaintiff cannot prove one or more elements of the claim. Binkley v. Am. Equity Mortgage, Inc., 447 S.W.3d 194, 196 (Mo. banc 2014). When considering an appeal from summary judgment, we review the record in a light most favorable to the party against whom judgment was entered, and we afford the non-movant the benefit of all reasonable inferences from the record. Cardinal Partners, 301 S.W.3d at 108-09.

"The interpretation of an insurance policy is a question of law that this [C]ourt determines de novo." Lynch v. Shelter Mut. Ins. Co., 325 S.W.3d 531, 534 (Mo. App. S.D. 2010) (citation omitted). When interpreting the terms of an insurance policy, this

3

Court applies the meaning that an ordinary person would attach if purchasing insurance. Id.

## Discussion

### Points I & II

In her first point on appeal, Alessi argues the trial court erred in granting Mid-Century's motion for summary judgment, because the plain meaning of the policy states that Mid-Century is obligated to repair the damage for equivalent construction and use on the same premises. In her second point on appeal, Alessi likewise argues the trial court erred in granting summary judgment on her claim for vexatious refusal to pay, which was a derivative claim from her claim for breach of contract. We agree that the trial court erred in granting summary judgment.[1]

Coverage provisions in an insurance policy are to be liberally construed in favor of the insured to provide the broadest possible coverage. Harrison v. Tomes, 956 S.W.2d 268, 270 (Mo. banc 1997). The phrase at issue here is the policy language providing for a loss settlement of "the replacement cost of that part of the building damaged for equivalent construction and use on the same premises." These terms are not defined in the policy. When interpreting the language of an insurance policy that is not defined, courts will give a term its ordinary meaning unless it appears a technical meaning was intended. Mendenhall v. Prop. & Cas. Ins. Co. of Hartford, 375 S.W.3d 90, 92 (Mo. banc 2012). The ordinary meaning of a term is what an average person would reasonably understand. See Burns v. Smith, 303 S.W.3d 505, 511 (Mo. banc 2010). When it does

---

[1] While Mid-Century claims that Alessi's brief fails to comply sufficiently with Missouri Rules of Civil Procedure, Alessi's brief provides sufficient notice to Mid-Century and to this Court of the issues presented on appeal. Thus, we will review on the merits. See Mo. Consol. Health Plan v. BlueCross BlueShield of Mo., 985 S.W.3d 903, 907 (Mo. App. W.D. 1999).

4

not appear that a term was intended to have a technical meaning, the standard English dictionary definition will govern. Mendenhall, 375 S.W.3d at 92.

The key term for our analysis is "equivalent." While Mid-Century argues the phrase "that part of the building" is controlling, we disagree under the circumstances here.[2] Here, Alessi had a replacement-cost policy rather than an actual-value-cost policy. A replacement cost policy, as specifically stated in the policy, is defined as the cost of repair or replacement without deduction for depreciation. See 5 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION, §53.05[1] (LexisNexis). Replacement cost policies generally charge higher premiums in exchange for agreeing to repair or replace with material of like kind and quality, and it is irrelevant that the homeowner may be in a better position after a loss than before. Id. at §53.05[4][a]. Under the facts here, Alessi's replacement-cost policy stated it would repair or replace the damaged part of her building for equivalent construction and use without deduction for depreciation.

Black's Law Dictionary defines "equivalent" as "1. Equal in value, force, amount, effect, or significance; 2. Corresponding in effect or function; nearly equal; virtually identical." BLACK'S LAW DICTIONARY 620 (9th ed. 2009). Considering the definition in full, construed in favor of the insured to provide the broadest coverage possible, "equivalent" requires that the replacement be "equal in value" and "virtually identical." Alessi argues that by replacing the siding on the damaged portion of the property with mismatched siding, Mid-Century is not fulfilling its contractual obligation to replace the

---

[2] We note that Mid-Century cites to case law from other States in support of its position. We do not find those cases persuasive here, because they either discuss insurance policies without the same terms as relevant in this case, see Enwereji v. State Farm Fire & Cas. Co., 2011 WL 3240866 (E.D. Pa. July 28, 2011) (policy called for repairs to be made with "common construction," rather than equivalent construction), or factually distinct, see Green v. U.S. Auto. Ass'n, 936 A.2d 1178 (Pa. Sup. 2007) (evidence in record showed shingles of similar color, texture, function and shape were available on market), or were decided upon a different analysis, see Graffeo v. State Farm Fire & Cas., Inc., 628 So.2d 790 (1993) (not discussing policy term "equivalent").

5

damaged part of the building with "equivalent" materials. Certainly, it is likely that the value of Alessi's property would be reduced by obviously mismatched siding. If Mid-Century's proposed replacement is not "equal in value," then Mid-Century has not fulfilled its contractual obligations to provide a loss settlement of the replacement cost for equivalent construction and use, regardless of whether only the northern elevation was damaged. Conversely, it is possible that there is siding on the market that is in fact "nearly identical" to the existing siding on the other elevations of the property. Under this scenario, replacing the damaged siding on the northern elevation with nearly identical siding is an equivalent replacement, meeting Mid-Century's contractual obligation.

Moreover, our ruling here does not conflict with the language of the policy providing coverage for "direct physical loss." Where a risk specifically insured against sets other causes in motion in an unbroken sequence between the insured risk and the ultimate loss, the insured risk is regarded as the proximate, or direct, cause of the entire loss. See Bartholomew v. Cameron Country Mut. Ins. Co., 882 S.W.2d 173, 175 (Mo. App. W.D. 1994) (citing 5 APPLEMAN, INSURANCE LAW AND PRACTICE, § 3083 at 309-311(1970)). Here, the hail damaged the northern elevation of the property, and Alessi's claimed damage continued directly and proximately from that event.

Under the facts before this Court following the trial court's entry of summary judgment, we cannot answer the questions of whether the replacement siding is virtually identical or if a house with mismatched siding is equal in value to a house with matching siding. These are questions of fact for a jury to decide. See e.g., Collins v. Allstate Ins. Co., 2009 WL4729901, at *1, 5-6 (E.D. Pa. Dec. 10 2009) (where insurance policy calls

6

for reimbursing insured for repair costs of "equivalent construction for similar use" and plaintiff claims replacement materials are not equivalent, that creates genuine issue of material fact preventing summary judgment). Accordingly, we find that summary judgment was inappropriate here, because there are unresolved issues of material fact.

Alessi's second points contends the trial court erred in granting summary judgment on her claim for vexatious refusal to pay, which was derivative to her claim for breach of contract. See Fischer v. First Am. Title Ins. Co., 388 S.W.3d 181, 191 (Mo. App. W.D. 2012). Having held that summary judgment was inappropriate on the breach-of-contract claim, we likewise reverse the trial court's grant of summary judgment on the derivative vexatious-refusal-to-pay claim.

Points ones and two on appeal are granted.

## Conclusion

The judgment of the trial court is reversed and remanded for a trial in accordance with this opinion.

_____
Gary M. Gaertner, Jr., Judge

Kurt S. Odenwald, P.J., concurs.
Robert G. Dowd, Jr., J., concurs.

7